GEORGE A. WILLIAMS AND WIFE
vs.
SAMUEL C. DONALDSON AND
JAMES WINCHESTER.

DECEMBER TERM, 1849.

[POWER OF MARRIED WOMEN OVER THEIR SEPARATE ESTATE.]

A MARRIED woman has no power over her separate estate but such as has been specially given to her, and in exercising the power of disposition she is restricted to the particular mode specified in the instrument under which she takes when it undertakes to make such specification.

[By a marriage settlement, executed on the 11th of September, 1849, in contemplation of a marriage then intended to be shortly had and solemnized between George A. Williams and Jane A. Douglas, all the real and personal estate of the intended wife was conveyed to Donaldson & Winchester, *in trust.* *First,* for the said Jane, her heirs, executors, administrators and assigns, until the solemnization of the intended marriage. *Secondly,* after said marriage to receive the rents, profits, income and dividends of all said property, and to pay over the same, or such parts thereof as she shall require, to the said Jane, "on her own separate receipt, or to her own separate order in writing," and to invest such parts of the same as she shall not so require, in such property, real or personal, as she and her husband "shall in writing under their hands jointly direct and designate," and the income of such investments to pay to the said Jane, "on her own separate receipt or order in writing, as is above provided for in regard to the income of the property hereby conveyed," with power to the said trustees, "with the consent and approbation" of her and her husband, "testified in writing for that purpose, to sell, convey, transfer and dispose of any of said property," and lay out the proceeds in "new stocks, funds, securities or real estate," as often as occasion shall require, all which new stocks, &c., and the income thereof, "shall go and remain upon the same trusts and for the same intents and purposes" as those which shall have

been so sold. *Thirdly*, if the said Jane shall survive her said husband, then, on his decease, to reconvey to her all the property, which shall, at his death, be held by the said trustees, or the survivor of them by virtue of these presents. *Fourthly*, if the said Jane shall die before her said husband, then, on her decease, to convey all the trust property held by them "to such person or persons, and in such proportions, and for such estates as the said Jane, by any last will and testament, or by any instrument in the nature of a last will, shall direct and appoint, and the said Jane is hereby expressly authorized and empowered to make such last will and testament or instrument in the nature of a last will, notwithstanding her coverture as aforesaid." *Fifthly*, if the said Jane shall die before her said husband, leaving no last will, or instrument in the nature of a last will, then, on her decease, to convey all said trust property then held by them, "to such child or children or the lineal descendants of any child or children of the said Jane as shall be living at her decease, in fee simple and absolute property, in the same proportions as are observed in the descent and distribution of intestate estates in Maryland." *Sixthly*, if the said Jane shall die before her said husband, leaving no last will or instrument in the nature of a last will, and leaving no lineal descendants living at the time of her death, then, on her decease, to convey all the said trust property then held by them "to the right heirs at law and personal representatives of the said Jane, in fee simple and absolute property, and in such proportions as are observed in the descent and distribution of intestate estates in Maryland, and as if she had died sole and unmarried."

The settlement then contains a covenant on the part of the intended husband, that he will permit the said Jane to receive the income of said trust property "to her own sole and separate use, without any hindrance on his part; that her own separate receipts or orders in writing shall be good and valid discharges therefor; that any last will, or instrument in the nature of a last will, executed by the said Jane, shall be held valid in the same manner as if she had continued sole and un-

married," and that he will, from time to time, upon every reasonable request of said trustees or the survivor of them, "make, do, and execute all and every such further act and acts, thing and things, which may be necessary or proper for the better securing and carrying into effect, in their true intent and meaning, the trusts, purposes and intentions herein declared." The trustees also covenant that they will stand seized of the trust property "for the uses, trusts, purposes and intentions aforesaid," and, upon reasonable request, will well and truly account for all moneys by them respectively received, and for all their respective proceedings in the premises, and that they will faithfully perform all the aforesaid trusts, "each trustee being accountable for his own willful acts and defaults, and not for the acts and defaults of the other." The settlement also contains a provision for the appointment of a new trustee or trustees "by joint writing under the hands and seals of the said Jane and her husband," in case of the death or resignation of either of those named therein.

On the 16th of January, 1850, Williams and wife filed their bill, which, after stating the above marriage settlement, and that the property thereby conveyed consisted entirely of personal estate, amounting to upwards of $50,000 in value, charges that said Williams has been for some time engaged in business as a partner in a certain firm in the city of Baltimore, which business is prosperous and yields him a handsome profit, and that the addition of the sum of $16,000 to the capital engaged in said business on his account would greatly enlarge it and increase his profits to a large sum beyond the interest of such additional capital; that for this reason, and in order to increase the income of complainants, he is desirous of borrowing the said sum of $16,000, and the said Jane wishes to pledge so much of her personal property embraced in said settlement, as may be necessary to secure the payment of the said sum which her husband desires to borrow, and that she applied to the said trustees, and directed them, as she conceives she is legally entitled to do, to assign and transfer certain specified stocks held in trust by them for her separate use, which

they have refused to do, alleging they are not authorized so to do by the terms of said settlement. The bill then prays that said trustees may be decreed to assign and transfer the said enumerated stocks by way of pledge, according to the direction of the said Jane, and for general relief.

The trustees, in their answer, admit the allegations of the bill, and aver, as the reason for their refusal to make the transfer demanded of them by Mrs. Williams, that they do not know whether by the true construction of said deed of settlement they would be justified in making such assignment and transfer; they further aver that they are willing and anxious to perform the duties of their trust in accordance with its true meaning, and they rely upon this court to direct them in the present instance, and that they will abide by and perform whatever the court may decree in the premises.

Upon this bill and answer, the Chancellor delivered the following opinion.]

———

THE CHANCELLOR :

I have read, with much attention, the marriage settlement and deed of trust exhibited in this case, and have examined and carefully considered the authorities referred to by the solicitor for the complainants, and some others bearing upon the subject, and am of opinion that such a decree as this bill prays for cannot be passed.

The American doctrine upon this interesting question is at variance with that which seems now to prevail in England, and I think the former is vindicated by Chancellor Kent and Chief Justice Gibson, with a force and clearness of reasoning which cannot be shaken. *Vide The Methodist Church* vs. *Jaques,* 3 *Johns. Ch. Rep.* 78, and *Thomas* vs. *Folwell,* 2 *Wharton,* 11.

The American doctrine, as established by these cases, and others, is, that the power of a *feme covert* over her separate estate must be exercised according to the mode prescribed by the instrument under which she becomes entitled to the property, and that to confine her to that particular mode the instrument need not specially restrict her to it. That she has no power

over her separate estate but such as has been specially given to her, and in exercising the power of disposition she is restricted to the particular mode specified in the instrument under which she takes when the instrument undertakes to make such specification. By referring to the cases collected in the *Law Library, vol. 65, pages* 370, *et seq.,* this will be found to be the settled doctrine in this country upon the subject, and I am of opinion that it does not conflict, but is in harmony with the cases which have been decided by the Court of Appeals in this state.

The deed, in this particular case, appears to have been drawn up with much care, and prescribes in very precise terms the mode in which Mrs. Williams shall dispose of her separate estate, and I should much apprehend, that by passing the decree prayed for by this bill, I should defeat the object to accomplish which the deed was executed.

THOS. DONALDSON, for the Complainant.